# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAVERT COX, | Case No. 1:16-cv-00191-LJO-EPG-HC |
| Petitioner, | FINDINGS AND RECOMMENDATION RECOMMENDING DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| R. NDOH, | |
| Respondent. | |

Petitioner Lavert Cox is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In the petition, Petitioner alleges the trial court erred by refusing to instruct the jury on the defense of entrapment and by denying his discovery motion for the officer's personnel records without conducting an *in camera* review.

For the reasons discussed herein, the Court recommends denial of the petition for writ of habeas corpus.

**I.**

**BACKGROUND**

While Petitioner was serving a sentence of fifteen years to life pursuant to a 1988 conviction, on February 15, 2013, Petitioner was convicted by a jury in the Kings County Superior Court of bribing an executive officer. (CT[1] 192a). Petitioner was sentenced to an

---
[1] "CT" refers to the Clerk's Transcript on Appeal lodged by Respondent on July 18, 2016. (ECF No. 12).

imprisonment term of eight years, to be served consecutively to the sentence for the 1988 conviction. (CT 246). On June 3, 2015, the California Court of Appeal, Fifth Appellate District affirmed the judgment. People v. Cox, No. F067171, 2015 WL 3513625 (Cal. Ct. App. June 3, 2015). The California Supreme Court denied Petitioner's petition for review on August 26, 2015. (LDs[2] 17, 18).

On February 11, 2016, Petitioner filed the instant federal petition for writ of habeas corpus. (ECF No. 1). Respondent has filed an answer to the petition, and Petitioner has filed a traverse. (ECF Nos. 10, 11).

## II.

## STATEMENT OF FACTS[3]

Correctional Officer Michael Ferree was approached by defendant in early 2010. Defendant asked Ferree to remove certain documents from his central file in exchange for cash. Ferree declined defendant's request and, believing defendant was just testing him as inmates are wont to do, he opted not to report the incident to his superiors. In August 2010, defendant approached Ferree again about removing the documents from his central file in advance of a parole board hearing. It then became apparent defendant was serious; Ferree reported the incident to the Investigative Services Unit (ISU).

Sergeant Robert Amaro with ISU provided Ferree with a recording device and asked Ferree to see if he could get a conversation with defendant recorded. Ferree, assigned as a search and escort officer, called defendant's housing unit and asked that defendant be sent to the program office. A recording of the conversation upon defendant's arrival was played for the jury. A second recording of a subsequent conversation between Ferree and defendant, made the following day, was also played for the jury. In the conversations, defendant offered Ferree $2,000 in order to remove certain documents from his file, providing Ferree with a list of the specific documents. Defendant also offered and provided to Ferree four $100 bills as a down payment. The remainder of the money was to be paid in about two weeks' time. After the recorded meetings, Ferree provided defendant's list and the cash to Amaro.

Defendant testified to an entirely different scenario. He indicated Ferree was the initiating party, asking defendant if he wanted documents removed from his central file in order to improve his chances with the parole board. Defendant declined the assistance, but Ferree continued to approach him with the offer.

---

[2] "LD" refers to documents lodged by Respondent on July 18, 2016. (ECF No. 12).
[3] The Court relies on the California Court of Appeal's June 3, 2015 opinion for this summary of the facts of the crime. See Vasquez v. Kirkland, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009).

> Defendant found Ferree's contacts harassing and complained about it to his dorm mates. One of those inmates provided $400 to defendant so he could pay Ferree to leave him alone. Defendant denied paying Ferree a bribe. He also denied providing Ferree with a list of documents he wanted removed from his central file. Moreover, while defendant can be heard offering Ferree a gold chain and other jewelry as collateral or compensation for the remainder of the total payment discussed, defendant testified he never intended to pay Ferree any more money. It was just a way to get Ferree to leave him alone.

Cox, 2015 WL 3513625, at *1.

## III.

## STANDARD OF REVIEW

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged conviction arises out of the Kings County Superior Court, which is located within the Eastern District of California. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (*en banc*). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

Under the AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Davis v. Ayala, 135 S. Ct. 2187, 2198 (2015); Harrington v. Richter, 562 U.S. 86, 97–98 (2011); Williams, 529 U.S. at 413. Thus, if a petitioner's claim has been

3

"adjudicated on the merits" in state court, the "AEDPA's highly deferential standards" apply. Ayala, 135 S. Ct. at 2198. However, if the state court did not reach the merits of the claim, the claim is reviewed *de novo*. Cone v. Bell, 556 U.S. 449, 472 (2009).

In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. In addition, the Supreme Court decision must "'squarely address[] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of review under AEDPA and the Court must defer to the state court's decision. Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2008) (alterations in original) (quoting Wright v. Van Patten, 552 U.S. 120, 125, 123 (2008)).

If the Court determines there is clearly established Federal law governing the issue, the Court then must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, [the] clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" clearly established Supreme Court precedent if it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A state court decision involves "an unreasonable application of[] clearly established Federal law" if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Richter, 562 U.S. at 102. That is, a petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

If the Court determines that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," and the error is not structural, habeas relief is nonetheless unavailable unless it is established that the error "had substantial and

injurious effect or influence" on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (internal quotation mark omitted) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

The AEDPA requires considerable deference to the state courts. The Court looks to the last reasoned state court decision as the basis for the state court judgment. See Brumfield v. Cain, 135 S. Ct. 2269, 2276 (2015); Johnson v. Williams, 133 S. Ct. 1088, 1094 n.1 (2013); Ylst v. Nunnemaker, 501 U.S. 797, 806 (1991). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013). "Independent review of the record is not *de novo* review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). The federal court must review the state court record and "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Richter, 562 U.S. at 102.

## IV.

## REVIEW OF CLAIMS

### A. Trial Court's Failure to Instruct the Jury on Entrapment

In his first claim for relief, Petitioner asserts that the trial court's decision to not instruct the jury on entrapment violated his rights under the Sixth and Fourteenth Amendments. (ECF No. 1 at 5).[4] Respondent argues that the state court reasonably determined that any instruction error was harmless under Chapman v. California, 386 U.S. 18, 24 (1967). (ECF No. 10 at 21–

---

[4] Page numbers refer to the ECF page numbers stamped at the top of the page.

22). Additionally, Respondent contends that this claim would fail even under *de novo* analysis. (Id. at 22).

Petitioner challenged the trial court's failure to instruct the jury on entrapment on direct appeal in the California Court of Appeal, Fifth Appellate District, which denied the claim in a reasoned decision. The claim was also raised in the petition for review, which the California Supreme Court summarily denied. (LDs 17, 18). As federal courts review the last reasoned state court opinion, the Court will "look through" the summary denial and examine the decision of the California Court of Appeal. See Brumfield, 135 S. Ct. at 2276; Ylst, 501 U.S. at 806.

In denying Petitioner's claim regarding the trial court's failure to instruct on entrapment, the California Court of Appeal stated:

### 1. The Defense of Entrapment

> Defendant contends the trial court erred by refusing to instruct the jury with CALCRIM No. 3408[5] because there was substantial evidence supporting the defense despite the trial court's ruling otherwise. Plaintiff argues the trial court correctly denied defendant's request to instruct the jury on the defense of entrapment. Further, even if error occurred, plaintiff asserts it was harmless. We find any error to be harmless.

---

[5] "Entrapment is a defense. The defendant has the burden of proving this defense by a preponderance of the evidence. This is a different standard from proof beyond a reasonable doubt. To meet this burden, the defendant must prove that it is more likely than not that (he/she) was entrapped.

"A person is entrapped if a law enforcement officer [or (his/her) agent] engaged in conduct that would cause a normally law-abiding person to commit the crime.

"Some examples of entrapment might include conduct like badgering, persuasion by flattery or coaxing, repeated and insistent requests, or an appeal to friendship or sympathy.

"Another example of entrapment would be conduct that would make commission of the crime unusually attractive to a normally law-abiding person. Such conduct might include a guarantee that the act is not illegal or that the offense would go undetected, an offer of extraordinary benefit, or other similar conduct.

"If an officer [or (his/her) agent] simply gave the defendant an opportunity to commit the crime or merely tried to gain the defendant's confidence through reasonable and restrained steps, that conduct is not entrapment.

"In evaluating this defense, you should focus primarily on the conduct of the officer. However, in deciding whether the officer's conduct was likely to cause a normally law-abiding person to commit this crime, also consider other relevant circumstances, including events that happened before the crime, the defendant's responses to the officer's urging, the seriousness of the crime, and how difficult it would have been for law enforcement officers to discover that the crime had been committed.

"When deciding whether the defendant was entrapped, consider what a normally law-abiding person would have done in this situation. Do not consider the defendant's particular intentions or character, or whether the defendant had a predisposition to commit the crime.

"[As used here, an *agent* is a person who does something at the request, suggestion, or direction of an officer. It is not necessary that the agent know the officer's true identity, or that the agent realize that he or she is actually acting as an agent.]

"If the defendant has proved that it is more likely than not that (he/she) <insert charged crime, e.g., committed embezzlement > because (he/she) was entrapped, you must find (him/her) not guilty of <insert charged crime >."

**A. The Trial Court's Ruling**

During a discussion regarding jury instructions, the following colloquy occurred:

"[The Court]: And I just want to make sure that everybody's clear that the defense of entrapment does not apply in this case, agreed?

"[Prosecutor]: I agree.

"The Court: Okay, [defense counsel]? [¶] ... [¶] ... I can tell you that according to the testimony from [defendant] he denied making a bribe. He's denied it.

"[Defense Counsel]: Correct.

"The Court: So entrapment wouldn't apply.

"[Defense Counsel]: Um—

"The Court: He's actually saying that the Officer Ferree just lied.

"[Defense Counsel]: Correct, that he was—and I don't know, I'd have to quickly look at the instructions, I don't know if it—if it's necessity or duress or any type of necessity or duress—

"The Court: Sure.

"[Defense Counsel]: —instruction would apply. I would agree with the Court that the—that on the state of the evidence a—a entrapment defense probably instruction would not—would not be given.

"The Court: If you'll approach 3406 through 3408 includes some defense. So go ahead and look at those.

"(Brief pause in the proceedings.)

"The Court: Back on the record. Go ahead, [defense counsel].

"[Defense Counsel]: Yes, your Honor, as to the charge conference in the jury instructions prior to my client testifying we did not discuss an entrapment defense. As I look at CAL CRIM 3408 the entrapment instruction, third paragraph states 'Some examples of entrapment might include conduct by badgering, persuasion by flattery or coaxing, repeated and insistent requests, or an appeal to friendship or sympathy.' Based on the defense evidence that was presented, I think badgering and repeated insistent requests would apply.

"Additionally, I guess another example of entrapment would be conduct that would make commission of a crime unusually attract[ive] to a normally law-abiding person.

"I think there's probably evidence, if the defendant's testimony is believed, that to put it I guess in regular terms, Ferree was trying to make him an offer he—he couldn't pass up which is hey, I'll help you out.

> "But for that—for those reasons, your Honor, I do think—I would request an entrapment instruction."

The People opposed the giving of the instruction. Defense counsel argued further and the court ruled as follows:

> "[Defense Counsel]: Well, I mean I guess if the jury thinks that a bribery had occurred as Sergeant Amaro I think testified that he thought, you know, the crime occurred on September 1st or August 31st, and no time before that, you know, then—then—then that he was badgered or there was repeated or insistent requests for him to produce the money, I think would—that's the evidence and would be deserving of the entrapment defense, and with that I submit.
>
> "The Court: All right. The Court is not going to allow the entrapment defense, the Court's of the belief that there was not substantial evidence presented by [defendant] to substantiate that jury instruction.
>
> "Basically what [defendant] testified to was that, and believed, was that this Officer Ferree was harassing the defendant and requesting that the defendant pay him money so that he could delete documents from his file, however, [defendant] continually testified that—that he did not pay the money in order to bribe this officer but to leave him alone, and that's the only reason why he gave him the money is to have Officer Ferree leave him alone.
>
> "So if the jury believes [defendant], he would not be guilty because he didn't bribe the officer, but it wouldn't be I'm not guilty because of entrapment."[6]

### B. The Applicable Law

" 'Entrapment' is the conception and planning of an offense by an officer and his procurement of its commission by one who would not have perpetrated it except for the trickery, persuasion or fraud of the officer. [Citation.]" (*People v. Strohl* (1976) 57 Cal.App.3d 347, 367.)

"In California, the test for entrapment focuses on the police conduct and is objective. Entrapment is established if the law enforcement conduct is likely to induce a *normally law-abiding person* to commit the offense. [Citation.] '[S]uch a person would normally resist the temptation to commit a crime presented by the simple opportunity to act unlawfully. Official conduct that does no more than offer that opportunity to the suspect—for example, a decoy program—is therefore permissible; but it is impermissible for the police or their agents to pressure the suspect by overbearing conduct such as badgering, cajoling, importuning, or other affirmative acts likely to induce a normally law-abiding person to commit the crime.' " (*People v. Watson* (2000) 22 Cal.4th 220, 223.)

A trial court is "required to instruct the ... jury on the defense of entrapment if, but only if, substantial evidence supported the defense." (*People v. Watson, supra,* at pp. 222–223.)

---

[6] We note a defendant may assert entrapment and still deny guilt. (*People v. Perez* (1965) 62 Cal.2d 769, 775–776; see Bench Notes to CALCRIM No. 3408.)

Application of the entrapment defense depends upon whether "the intent to commit the crime originated in the mind of defendant or in the mind of the entrapping officer." (*People v. Benford* (1959) 53 Cal.2d 1, 10.)

On appeal, the court reviews the record to determine whether substantial evidence supports the claimed defense to require the trial court to instruct regarding entrapment. (*People v. Federico* (2011) 191 Cal.App.4th 1418, 1422; *People v. Salas* (2006) 37 Cal.4th 967, 982.) And we review a claim of instructional error de novo. (*People v. Manriquez* (2005) 37 Cal.4th 547, 581.)

### C. Our Analysis

We need not decide whether the trial court erred in failing to instruct the jury pursuant to CALCRIM No. 3408 because even if error occurred, it was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24.)

Following a review of this record on appeal, it is obvious that the intent to commit the crime originated with defendant. (*People v. Benford, supra,* 53 Cal.2d at p. 10.)

A review of the recorded conversations plainly supports Ferree's testimony and would have only served to enhance Ferree's credibility. And although defendant claims Ferree's credibility was suspect due to a June 2009 incident wherein Ferree was found to have a cell phone on his person as he arrived at the state prison to begin work, the evidence very plainly revealed that on that occasion Ferree had inadvertently left his personal cell phone in a pocket of his uniform. Moreover, Ferree's testimony in that regard was corroborated by the testimony of Amaro.

Further, despite defendant's self-serving testimony that he was not offering a bribe to the officer in any manner and he was only trying to agree with Ferree so Ferree would leave him alone, defendant's own words in the recorded conversations can in no way be reasonably interpreted to support his version of the events. Read in context, it is plain the recordings corroborate Ferree's testimony in every way. The recordings also serve to directly contradict defendant's trial testimony.

For instance, during trial testimony, defendant denied providing Ferree with a list of documents he wished removed from his central file. Nevertheless, it is apparent from the recorded conversation that a document was provided to Ferree during the meeting of August 31, 2010:

> "Ferree: ... What exactly is it, what do you [want] pulled out of the file?
>
> "Cox: This right here.
>
> "Ferree: Damn.
>
> "Cox: Cause see all that's pertaining to the uhm, the 115...."

Additionally, defendant testified Ferree was "desperate himself" and "in desperation himself," apparently implying Ferree needed money and was thus harassing defendant about removing documents from his file in exchange for cash. And yet, in the recordings played for the jury, at one point defendant can be heard saying he was "on desperate measures at this time," referring to his own ongoing efforts to have certain documents removed from his central file ahead of

9

his next parole board hearing. Lastly, defendant claimed during his testimony that he had never spoken to Ferree prior to August 31, 2010, about paying another officer money to remove documents from his central file.[7] However, throughout the first recorded conversation, defendant routinely admits to having previously paid another officer to remove documents from his central file, and it is clear Ferree and defendant have discussed the topic prior to the recorded conversation. Most significantly, it is defendant who brings up the topic of paying the other officer, without any prompting whatsoever. (*People v. Strohl, supra,* 57 Cal.App.3d at p. 368 [trier of fact may infer wrongful intent from defendant's words and conduct].)

Finally, although the court did not specifically instruct on the defense of entrapment, that defense was effectively encompassed in the court's other instructions. The court told the jury that in order to convict defendant of bribery of an executive officer, the prosecution had to prove beyond a reasonable doubt that defendant gave or offered a bribe to Ferree and "acted with the corrupt intent to unlawfully influence that officer's official act, decision, or conduct." It also instructed the jury that in order to find defendant guilty it must conclude he acted with specific intent to commit bribery. Thus, if, as defense counsel argued, defendant simply offered and provided money to Ferree as a way to get Ferree to stop harassing him, he would not be guilty of bribery.

In sum, even assuming the trial court should have instructed on entrapment, the error was harmless even if it can be said to have violated defendant's constitutional rights. (See *People v. Demetrulias* (2006) 39 Cal.4th 1, 23 [assuming standard of *Chapman v. California, supra,* 386 U.S. 18 applies]; *People v. Manriquez, supra,* 37 Cal.4th at p. 588.) If jurors had believed defendant's version of events—which constituted the only possible evidence supportive of an entrapment defense—they would have acquitted him of the offense. The jury's verdict finding defendant guilty of Penal Code section 67 constitutes an implicit rejection of his version of events, thus eliminating any doubt the jury would have returned the same verdict had it been instructed on the defense of entrapment. (*People v. Demetrulias, supra,* at p. 24; *People v. Manriquez, supra,* at p. 588.) Because there is overwhelming admissible evidence in the record, including recorded conversations plainly establishing defendant offered to bribe Ferree, we conclude any purported error in failing to instruct the jury regarding the defense of entrapment was harmless beyond a reasonable doubt.

Cox, 2015 WL 3513625, at *2–5 (footnotes in original).

Here, the California Court of Appeal found that even if the trial court had erred under state law by failing to instruct the jury pursuant to CALCRIM No. 3408, it was harmless beyond a reasonable doubt under the federal constitutional standard set forth in Chapman. The Supreme Court has held that when a state court's "Chapman decision is reviewed under AEDPA, 'a federal court may not award habeas relief under § 2254 unless *the harmlessness determination*

---

[7] Amaro testified the investigation into the correctional officer identified by defendant was being handled by internal affairs, rather than the ISU.

*itself* was unreasonable.'" Davis v. Ayala, 135 S. Ct. 2187, 2199 (2015) (quoting Fry v. Pliler, 551 U.S. 112, 119 (2007)). That is, Petitioner must show that the state court's harmless error determination "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Ayala, 135 S. Ct. at 2199 (internal quotation marks omitted) (quoting Richter, 562 U.S. at 103).

Under Chapman, "the test for determining whether a constitutional error is harmless . . . is whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" Neder v. United States, 527 U.S. 1, 15 (1999) (quoting Chapman, 386 U.S. at 24). As established by both Petitioner's own testimony and defense counsel's closing argument, the defense theory presented at trial was that Petitioner paid Ferree so that Ferree would stop harassing Petitioner. (5 RT[8] 747–49, 754–57, 762, 765–66; 6 RT 930–38). Had the jury believed Petitioner's version of events, they would have acquitted Petitioner because conviction required finding that Petitioner "acted with the corrupt intent to unlawfully influence [Ferree]'s official act, decision, or conduct," CALCRIM No. 2600. (CT 200). Thus, the state court's determination that the guilty verdict constituted an implicit rejection of Petitioner's version of events and eliminated any doubt the jury would have returned the same verdict had it been instructed on entrapment was not objectively unreasonable.

The California Court of Appeal's harmless error determination was not contrary to, or an unreasonable application of, Chapman. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief on his first claim and it should be denied.

**B. Trial Court's Denial of Discovery Motion**

In his second claim for relief, Petitioner asserts that the trial court violated his Fourteenth Amendment rights by denying his Pitchess[9] motion to review Ferree's personnel records without

---

[8] "RT" refers to the Reporter's Transcript on Appeal lodged by Respondent on July 18, 2016. (ECF No. 12).

[9] Pursuant to Pitchess v. Superior Court, 11 Cal.3d 531 (Cal. 1974), "a defendant is entitled to discovery of an officer's confidential personnel records if those files contain information that is potentially relevant to the defense." Cox, 2015 WL 3513625, at *6 (citing Cal. Evid. Code §§ 1043–45). "To exercise this right, a defendant must file a motion demonstrating good cause for the discovery which, if granted, results first in an in camera court review of the

conducting an *in camera* review. (ECF No. 1 at 9). Respondent argues that because this claim does not raise a federal question, habeas relief is barred. (ECF No. 10 at 29). Respondent contends that even if Petitioner raises a claim under Brady v. Maryland, 373 U.S. 83 (1963), Petitioner is not entitled to habeas relief. (Id.).

Petitioner challenged, on federal due process grounds, the trial court's denial of his motion to review Ferree's personnel record without conducting an *in camera* review on direct appeal to the California Court of Appeal, Fifth Appellate District, which denied relief pursuant to state law without explicitly addressing the federal due process issue. Cox, 2015 WL 3513625, at *5–8. The due process claim also was raised in the petition for review, which the California Supreme Court summarily denied. (LDs 17, 18). Generally, federal courts "look through" summary denials and review the last reasoned state court opinion. See Brumfield, 135 S. Ct. at 2276; Ylst, 501 U.S. at 806. Here, however, there is no reasoned opinion, and the Court presumes the claim was adjudicated on the merits. See Williams, 133 S. Ct. at 1096 ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted."). Accordingly, the Court must review the state court record and "determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Richter, 562 U.S. at 102.

Whether, pursuant to Pitchess, the trial court erred in denying Petitioner's motion to review Ferree's personnel records without conducting an *in camera* review is an issue of California state law that is not cognizable in federal habeas proceedings. See Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). The Court "must construe *pro se* habeas filings

---

records and subsequent disclosure to the defendant of information 'relevant to the subject matter involved in the pending litigation.'" Id. (quoting Cal. Evid. Code § 1045(a)). To establish good cause, the defendant must "demonstrate a 'specific factual scenario' that establishes a 'plausible factual foundation' for the allegations of officer misconduct." Id. (quoting City of Santa Cruz v. Municipal Court, 49 Cal.3d 74, 85–86 (Cal. 1989)).

liberally." Allen v. Calderon, 408 F.3d 1150, 1153 (9th Cir. 2005) (citing Maleng v. Cook, 490 U.S. 488 (1989)). To the extent that Petitioner raises a federal due process claim to receive material exculpatory and impeachment evidence under Brady, the Court finds that the state court's denial of habeas relief was not contrary to, or an unreasonable application of, clearly established federal law.

In Brady, the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87. Even in the absence of a specific request, the prosecution has a constitutional duty to turn over exculpatory evidence that would raise a reasonable doubt about the defendant's guilt. United States v. Agurs, 427 U.S. 97, 112 (1976). The duty to disclose under Brady also extends to evidence that the defense might use to impeach prosecution witnesses. United States v. Bagley, 473 U.S. 667, 676 (1985). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. at 682. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. To establish that a Brady violation undermines a conviction, Petitioner must show: "(1) the evidence at issue is 'favorable to the accused, either because it is exculpatory, or because it is impeaching'; (2) the State suppressed the evidence, 'either willfully or inadvertently'; and (3) 'prejudice ... ensued.'" Skinner v. Switzer, 562 U.S. 521, 536 (2011) (quoting Strickler v. Greene, 527 U.S. 263, 281–282 (1999)).

Here, Petitioner does not demonstrate that Ferree's personnel record contained evidence favorable to Petitioner. Mere speculation that Ferree's personnel record *may* have contained information that *might* have impeachment value is not sufficient. See Agurs, 427 U.S. at 109–10 ("The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense."); Runningeagle v. Ryan, 686 F.3d 758, 769 (9th Cir. 2012) (explaining that "to state a Brady claim, [a petitioner] is required to do more than 'merely speculate' about" the withheld evidence). Additionally, Petitioner does not demonstrate that the prosecution was in possession

of Ferree's personnel record and suppressed the evidence. Therefore, the Court finds that the state court's rejection of Petitioner's due process claim was not contrary to, or an unreasonable application of, clearly established federal law. The state court's decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief on his second claim and it should be denied.

## V.

## RECOMMENDATION

Accordingly, the Court HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **THIRTY (30) days** after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **November 18, 2016**  /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE

14